UNITED STATES v. FABATA et al.

(District Court, N. D. New York.   October 26, 1918.)

1. BAIL ⊜⟶79(1)—BREACH OF CONDITION—RELIEF FROM LIABILITY.
    Under Rev. St. § 1020 (Comp. St. 1916, § 1684), providing that a court may in its discretion remit the whole or a part of the penalty of a forfeited criminal recognizance, whenever it appears "that there has been no willful default of the party," etc., the court can exercise such discretion only when the failure of defendant to appear was not willful.

2. BAIL ⊜⟶79(1)—RELIEF FROM LIABILITY—"WILLFUL" DEFAULT.
    That the failure of defendant in a criminal case to appear at the time required by his recognizance was by advice of his attorney does not make his default other than "willful."
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Willful.]

Action by the United States against Antonio Fabata and the National Surety Company. On application by the Surety Company for remission of penalty of bail bond. Denied.

This is an application by the National Surety Company for the remission of the whole or a part of the penalty of a bond in a criminal case executed by Antonio Fabata, as principal, and the National Surety Company, as surety, for the appearance of said Fabata to stand trial on an indictment found against him and which bond has been reduced to a judgment.

D. B. Lucey, U. S. Atty., of Ogdensburg, N. Y.

Wm. J. Griffin, of New York City, for defendant National Surety Co.

RAY, District Judge.   The defendant Antonio Fabata was duly indicted in this court, and with the National Surety Company, as surety, executed a bond for his appearance in this court at a designated term held at Auburn, N. Y., to answer to such indictment and abide the orders and judgment of the court.   On the day and at the term of court designated the defendant Fabata was called, but failed to appear or answer, and the surety was duly called and required to produce its principal, which it failed at that time to do, whereupon the court made an order forfeiting such bond and directing its prosecution and collection.   Thereafter this action was brought and judgment recovered against both defendants for the sum of $2,060.40, and now defendant the National Surety Company moves under section 1020, U. S. R. S. (U. S. Comp. St. 1901, p. 719; U. S. Comp. St. 1916, § 1684), for an order remitting the whole or a part of such judgment, on the ground it appears on petitioner's showing that there has been and was no

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

willful default of the party, and that a trial could, notwithstanding, be had in the case, and that public justice does not require the penalty of the bond to be enforced.

[1] The section of the Revised Statutes referred to provides as follows:

"When any recognizance in a criminal cause, taken for, or in, or returnable to, any court of the United States, is forfeited by a breach of the condition thereof, such court may, in its discretion, remit the whole or a part of the penalty, whenever it appears to the court that there has been no willful default of the party, and that a trial can, notwithstanding, be had in the cause, and that public justice does not otherwise require the same penalty to be enforced."

In United States v. Robinson et al., 158 Fed. 410, 85 C. C. A. 520, the Circuit Court of Appeals (Fourth Circuit) said, and accordingly held:

"Among other things, the foregoing section provides that the court may, in its discretion, remit the whole or a part of the penalty, whenever it appears that there has 'been no willful default of the party,' etc. While in a case like the one at bar a surety may suffer a hardship, owing to the provisions of this statute, nevertheless its terms are plain and unmistakable. It clearly defines the circumstances under which the court may exercise its discretion, and remit the whole or a part of the penalty, to wit, when there has been no willful default; and inasmuch as the court in this case found as a fact that the default was willful, it necessarily follows that it was not within the discretion of the court to vacate or modify the judgment in question."

I think this the true construction of the statute, and that, to authorize a remission of any part of the penalty of the bond, it must appear there "was no willful default of the party"—that is, of the defendant in the indictment, who failed to appear.

In this case the claim of the Surety Company is that Fabata, the principal, went with his attorney to the United States courthouse, but outside of same, in the city of Auburn, N. Y., at the time and place and term of court where required by the bond to appear, but that Fabata, by direction of his counsel, remained outside the courthouse · that it was arranged and agreed between them that Fabata was to remain outside, while his attorney went inside, and remain in a position where he could observe a preconcerted signal from his attorney, the attorney telling Fabata "that in the event of his considering it advisable for him, the said Fabata, to appear before the court a certain unmistakable signal would be given, and in the event that his attendance was deemed unadvisable at the time that another signal, which could in no event be mistaken for the other, would be given, in which latter case the said Fabata should immediately go to the railroad station and return to New York on the first possible train"; that after waiting quite a while the said attorney, a New York City lawyer, appeared at the entrance to the courthouse and gave the agreed signal last above referred to, the one on receipt of which Fabata was to return to New York; and that Fabata, "relying on and in compliance with the advice of his counsel, then and thereupon left Auburn on the first train and returned to New York." The affidavit that this took place, as claimed, is not made by the attorney of Fabata, or by

Fabata, but by the attorney for the Surety Company, who simply says that Fabata has so informed him. This falls short of proof that such an occurrence took place. It is the merest hearsay.

[2] But, even if such an arrangement was made and carried out between Fabata and his attorney from New York City, it falls far short of showing that there was no willful default on Fabata's part. On the other hand, it shows there was a willful default. Fabata and the Surety Company knew that Fabata's duty and obligation under the bond was then and there, at Auburn, to appear and answer, and abide the order of the court. Fabata did not appear, nor did the surety produce him. He was duly called and failed to respond in person, but his attorney did appear and requested a delay or postponement, which was refused, as there had been several adjournments of the case. In open court at said time and place, as this court well remembers, and as Mr. D. B. Lucey, the United States attorney, who was present, makes affidavit, the said attorney for Fabata, when Fabata and the surety were called as set forth, stated in open court "that on the preceding day he had made an engagement with the said Fabata to meet him the next morning, to wit, November 16, 1917, at the Grand Central Terminal to take a train from there to Auburn for the purpose of appearing in court (court then being in session at said place); that when O'Neill (the said attorney) arrived at the station in New York he looked around for the said Fabata, and he was unable to see or find him; and that he had no knowledge of where he then was." Fabata was not in court, and this is not disputed. The surety did not produce him, when called and required so to do, and this is not disputed. That he was not in Auburn, remaining outside the courthouse, is shown by what occurred in the courtroom at the time. Plainly, in either event, it was a willful default and failure to appear on Fabata's part, and a failure to produce the defendant on the part of the surety. Such practice, even if it occurred as now claimed, cannot be encouraged or approved, or held to be other than a willful default.

The motion to remit the whole or any part of the penalty of the bond or judgment, or reduce such judgment, must be and is denied.

The incorrect order, headed as of the Syracuse term commencing April 2, 1918, when the motion was first presented, and which was inadvertently and prematurely signed, and which the clerk was directed not to enter, and which has not been filed or entered, is canceled, annulled, vacated, and set aside.