**UNITED STATES v. AGAPITO et al.**

No. 35935.

District Court, E. D. New York.

Jan. 7, 1941.

Irving C. Maltz, of Brooklyn, N. Y., for the motion.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Morris K. Siegel, Asst. U. S. Atty., of New York City, of counsel), opposed.

CAMPBELL, District Judge.

This is a motion for an order under Title 18, Section 601, United States Code, 18 U.S.C.A. § 601, vacating the forfeiture of the bail bonds heretofore entered and for an order vacating the judgment entered upon the said forfeiture on June 28th, 1940, in favor of the United States of America and against Raffaele Brancaccio, also known as Alberto Brancaccio.

On February 6th, 1934, an indictment was filed against the above named defendants, they having been previously arrested and held to bail, Patsy Agapito in $2,500, Bernard Grossman in $3,500, and Murray Welsh in $3,500.

Prior to that time the defendants Grossman and Welsh gave false addresses to the U. S. Attorney's office.

The person who had been the record owner of the property, which was offered as security and in whose name as surety the bonds purported to be made and signed, had been dead for some years, and no one had power to bind him.

Notice was sent by the United States Attorney's office by mail addressed to the addresses they had given, and to the address which had been given as that of the surety requiring the said three defendants to appear in the United States District Court, Eastern District of New York, and plead to the indictment on the 19th day of February, 1934.

The defendants failed to appear on that day, the notice to the defendant Agapito was not returned, their defaults were noted, and on the motion of the Assistant United States Attorney in charge of that case, the bonds were forfeited.

The defendant Agapito is dead and no affidavit of his forms part of the moving papers.

On April 27th, 1934, the defendants were arraigned and upon their plea of guilty they were each sentenced to be imprisoned for sixty days in the Detention Headquarters.

On January 22nd, 1940, the defendants moved to vacate and set aside the forfeiture in the above matter, which on January 22nd, 1940, was denied by Judge Moscowitz, who rendered an opinion, D. C., 31 F.Supp. 878, 879, in which he stated "Defendants have not met the requirements of the statute and satisfied the court that the default was not willful", and on February 19th, 1940, Judge Moscowitz made an order denying the motion.

An investigation was thereafter conducted by the office of the United States Attorney, Eastern District of New York, in an effort to enforce the liability on the forfeited bonds, and it was then ascertained that Raffaele Brancaccio, whose name appeared in the bonds as surety had died on December 3rd, 1927, approximately six years prior to the execution of the bonds in question.

Morris K. Siegel, the Assistant United States Attorney, in his affidavit in opposition to this motion says, "An examination of the Surrogate's Court records in the County of Kings, discloses that Alberto Brancaccio was appointed as a Co-executor of the estate of Raffaele Brancaccio. In comparing the signature on the bail bonds with the signature on file with the Surrogate's records, it is apparent that Alberto Brancaccio's writing is similar with the one appearing on the bail bonds."

A motion was made on June 10th, 1940, to which date it had been adjourned, for judgment against Raffaele Brancaccio, also

known as Alberto Brancaccio, in the sum of $9,500, based on an affidavit by Morris K. Siegel, Assistant United States Attorney, in which he recited the death of Raffaele Brancaccio the owner of 1170 42nd Street, Brooklyn, New York, on December 3rd, 1927, approximately six years prior to the executions of the bonds in this case, the examination of the records of the Surrogate's Court in the County of Kings which disclosed that Alberto Brancaccio and Antonio Brancaccio the sons of the decedent were appointed executors and in which he said as follows: "In comparing the signature on the bail bonds with the signature on the Surrogate Court's papers it is apparent that Alberto Brancaccio's writing is similar with the name appearing on the bail bonds. It may be inferred that Alberto Brancaccio used the name of Raffaele Brancaccio in signing the bail bonds in this case. It is for that reason that judgment is sought to be obtained herein against Raffaele Brancaccio, also known as Alberto Brancaccio."

The notice of motion, said affidavit, and other moving papers were duly served on said Alberto Brancaccio.

On June 10th, 1940, the motion was duly called, but there was no answer on the part of Alberto Brancaccio and it was granted on default and on June 26th, 1940, judgment was entered.

On December 2nd, 1940, the motion now under consideration came on before Judge Inch, who referred the same to me.

Title 18, Section 601, U.S.Code, 18 U.S.C.A. § 601, under which this motion is made, reads as follows: "§ 601. Remission of penalty of recognizance. When any recognizance in a criminal cause, taken for, or in, or returnable to, any court of the United States, is forfeited by a breach of the condition thereof, such court may, in its discretion, remit the whole or a part of the penalty, whenever it appears to the court that there has been no willful default of the party, and that a trial can, notwithstanding, be had in the cause, and that public justice does not otherwise require the same penalty to be enforced."

On behalf of the Government is cited Rule 5 of the General Rules of this Court, so much thereof as is necessary for consideration in the case at bar, reads as follows: "Rule 5. Extension of Terms. For the purpose of taking any action which must be taken within the Term of the Court at which final judgment or decree is entered, each Term of Court is extended for ninety days from the date of entry of the final judgment or decree."

The Government contends that inasmuch as the surety did not move within ninety days after June 26th, 1940, which would have been on or before September 24th, 1940, but waited until after the ninety days had expired, its notice of motion being dated November 26th, 1940, and brought on for hearing on December 2nd, 1940, this Court is without jurisdiction in the premises.

If the motion under consideration was one that must be heard in the term in which final judgment is granted, the objection would be a good one, as jurisdiction once lost is lost forever, but the statute in question, Title 18, Section 601, U. S.Code, 18 U.S.C.A. § 601, is a remedial statute, and while there can be no question that ordinarily this Court would not have jurisdiction after the expiration of the term as extended, that Rule does not apply in the case at bar, and the making of the motion, under consideration, is not so limited. United States v. Traynor, D.C., 173 F. 114, 115; United States v. Smart, 8 Cir., 237 F. 978, 982; Griffin v. United States, D.C., 270 F. 263, 265; United States v. O'Leary, D.C., 275 F. 202; Henry v. United States, 7 Cir., 288 F. 843, 32 A.L.R. 257.

Rule 5 does not apply, and this Court has jurisdiction.

To obtain relief three things must be shown by the moving party:

1. It must be shown that there was no willful default.

2. It must appear that a trial could notwithstanding be had.

3. The Court must believe the public justice does not require that the penalty be enforced. Sun Indemnity Co. of New York v. United States, 3 Cir., 91 F.2d 120; United States v. Costello, 6 Cir., 47 F.2d 684; Henry v. United States, 7 Cir., 288 F. 843, 32 A.L.R. 257; United States v. Sulvani et al., D.C., 4 F.Supp. 775; United States v. Mack, 295 U.S. 480, 488, 55 S.Ct. 813, 79 L.Ed. 1559; United States v. Kelleher, 2 Cir., 57 F.2d 684, 84 A.L.R. 14; United States v. Nordenholz, 4 Cir., 95 F.2d 756.

The excuse offered is that the defendants were not notified to appear on February 19th, 1934.

The answer to that is that two of them gave false addresses, and the notice to the one who gave a correct address, was not returned showing either that he was not at that address between the time of its receipt and February 19th, 1934, or that if he received it, he did not obey it, and therefore, they were alone to blame for the failure to receive notice, or obey it if received, and the name of the surety in the bonds was that of a man, who had at that time been dead for approximately six years, and of course notice could not be given to him.

All of this convinces me that the default was willful.

It is true that they later appeared and pleaded guilty, and were punished, but that is not controlling. United States v. Kelleher, 2 Cir., 57 F.2d 684, 84 A.L.R. 14.

A much more serious question arises, however, as to the bonds.

The bonds were not executed by the owner of the property, offered as security, who had departed this life, long before that time, but it has been charged on behalf of Government and not denied, after notice that the bonds were executed by his son, Alberto Brancaccio, against whom this judgment, after investigation by the Government, has been entered.

The son had no authority to sign his father's name to said bonds, and there is no showing that he had, and he evidently did not have the sole title to said premises, of all of which the Government had no knowledge until a late date.

If bail bonds of this character are to be given, and received, then a direct blow will be delivered against the administration of justice, and the giving of such bonds and the giving of wrong addresses by two defendants and the failure of the Post Office to return the notice to Agapito and his failure to obey it, seem to me to be all a part of a deliberate attempt to render nugatory the efforts of the officers engaged in the enforcement of the laws, therefore, I believe that public justice requires that the penalties in this case be enforced.

The delay of the Government in enforcing liability does not bar it of its right, and for some time at least the act of the one against whom judgment was finally entered in the relation to the signing of the bonds, accounts for some of the delay.

Motion denied.