## INTERSTATE COMMERCE COMMISSION v. BLUE DIAMOND PRODUCTS CO.

No. 14387.

United States Court of Appeals
Eighth Circuit.

Nov. 5, 1951.

H. J. Simmons, Atty., Interstate Commerce Commission, Kansas City, Mo. (Leo H. Pou, Washington, D. C., and Herman L. Bode, Minneapolis, Minn., Attys., Interstate Commerce Commission, were with him on the brief), for appellant.

Oscar E. Johnson, Council Bluffs, Iowa (Ross, Johnson, Northrop & Stuart, Council Bluffs, Iowa, were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a final order dismissing plaintiff's (appellant's) complaint. Plaintiff by this action sought a permanent injunction restraining defendant from procuring certain named motor carriers to transport its property in interstate commerce by motor vehicle on the public highways for compensation in alleged viola-tion of Section 209 of the Interstate Commerce Act, 49 U.S.C.A. §§ 306(a) and 309 (a). The complaint alleged, inter alia, that defendant, an Iowa corporation, induced and procured certain named persons to engage in interstate operations on public highways as common and contract carriers by motor vehicle and as such carriers to transport for hire, butter on public highways between certain named places, well knowing that the persons so procured did not hold operating authority issued by the Interstate Commerce Commission authorizing them to engage in such interstate commerce. The complaint recited that the suit was brought and jurisdiction of the court invoked under the provisions of Sections 204(a) and 222(b) of the Interstate Commerce Act, 49 U.S.C.A. §§ 304(a), 322(b), and under the general laws and rules relative to suits in equity.

After the filing of the complaint defendant moved for a dismissal on two grounds: (1) the court had no jurisdiction over the subject matter; and (2) failure to join indispensable parties. This motion was overruled by the judge then presiding, whereupon defendant filed answer in which it specifically pleaded as defenses the grounds urged in its motion to dismiss and in effect denied all material allegations of the complaint. Thereafter the case came on for trial before another judge who, after hearing statements of counsel for both parties and after consultation with counsel, concluded first to hear the issues raised by defendant's motion for dismissal and preserved in its answer. This was with the consent of counsel for both of the parties. The court requested defendant to offer some evidence to show the relationship that existed with reference to the lease contracts and the employment contracts that had been discussed by counsel for both parties in their opening statements. Testimony was presented in open court covering two of the specific transactions complained of in plaintiff's complaint, these being selected as typical of all the items complained of. There was produced by defendant and offered and received in evidence the original contracts with reference to these transactions and there was oral testimony offered.

The evidence with reference to the first typical transaction showed that a truck was rented by defendant from Mark Teague under written lease. On the trip complained of this truck was driven and operated by an employee of the defendant. The truck was also driven and operated on the return trip by an employee of the defendant, and on the return trip carried merchandise belonging to defendant. In the second typical transaction it appeared that a truck was rented from Cleo Morehouse. Mr. Morehouse operated the truck and he was a regular employee of defendant, having been regularly employed by defendant as a truck driver for a period of three and one-half years and having driven trucks belonging to defendant as well as those rented by defendant. This truck was driven into Chicago and returned. The evidence disclosed that defendant owned a fleet of trucks for the transportation of its merchandise and it leased the trucks involved under written leases containing the terms and conditions of such lease and setting out the rental payable, and such trucks were used only for the transportation of defendant's merchandise. Defendant had the right to hire the drivers of these trucks, and in some instances the drivers were the owners of the leased trucks. The drivers were employees of the defendant and paid by it for their services and the trucks were under the direct control of defendant. Defendant paid unemployment compensation tax on all these truck drivers and also paid workmen's compensation insurance covering them, withheld Federal income tax payments, and all drivers were under bond. Defendant had the right to determine who should be the driver of any particular truck and defendant had the right to discharge the drivers at any time at its discretion. Defendant used its own trucks at the same time and all drivers were supervised in the same manner. The owners were paid a specified rental for the lease of the trucks and the drivers were paid a specified sum for their services in driving the trucks. Defendant preferred to use its own employees in transporting its butter which is very perishable and it could thus control the time of delivery and the condition of the merchandise upon delivery.

Plaintiff offered no evidence but cross-examined defendant's witnesses. After hearing the evidence submitted and the arguments of counsel, the court sustained the motion to dismiss and from the order of dismissal so entered plaintiff prosecutes this appeal. The appeal involves two questions: Did the court have jurisdiction to grant the relief asked in plaintiff's complaint, and were the owners of the leased trucks indispensable parties?

The statute under which plaintiff predicates its right to injunctional relief and likewise the jurisdiction of the court to grant such relief is Section 222(b) of the Interstate Commerce Act, 49 U.S.C.A. § 322(b). That section so far as here pertinent reads as follows: "If any motor carrier or broker operates in violation of any provision of this part * * *, the Commission * * * may apply to the district court of the United States for any district where such motor carrier or broker operates, for the enforcement of such provision of this part * * * and such court shall have jurisdiction to enforce obedience thereto by a writ of injunction or by other process, mandatory or otherwise, restraining such carrier or broker, his or its officers, agents, employees, and representatives from further violation * * *."

It is to be noted that this statute confers jurisdiction on the district court to enjoin an offending carrier or broker. No mention is made of shippers, such as the defendant confessedly is. By this statute Congress has definitely specified the parties who may be enjoined from violating the provisions of the Act and it is significant that so far as the Act is concerned it does not purport to confer jurisdiction upon the district court generally to enjoin violators but only to enjoin those designated.

In Continental Casualty Co. v. United States, 314 U.S. 527, 62 S.Ct. 393, 396, 86 L.Ed. 426, the Supreme Court, speaking of the power of courts of the United States to act after the term in which the forfeiture of a bail bond was entered, said:

"Whatever may have been the powers of the courts of the United States before the statute, those powers are now regulated by statute. Cf. United States v. Mack, 295 U.S. 480, 488, 55 S.Ct. 813, 817, 79 L.Ed. 1559. These statutory powers are exclusive. Before remission may be allowed there must be a determination of lack of wilfulness in the default, that a trial can be had, and that public justice does not otherwise require the enforcement of the penalty. The statement of the conditions negatives action without the satisfaction of those requirements. Generally speaking a 'legislative affirmative description' implies denial of the non-described powers. Durousseau v. United States, 6 Cranch 307, 314, 3 L.Ed. 232. The circumstances of this inquiry carry us beyond the rule of *expressio unius est exclusio alterius*, cf. Ford v. United States, 273 U.S. 593, 611, 47 S.Ct. 531, 537, 71 L.Ed. 793, and into the domain of inconsistency of purpose. Cf. Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 436, et seq., 27 S.Ct. 350, 353, 51 L.Ed. 553. There cannot logically be two series of tests to determine the power of a federal court to relieve of forfeiture under a recognizance."

If Congress had intended to include shippers, manufacturers and processors in the provisions of the Act against whom injunction might lie, it seems logical to assume, in view of the fact that it enumerated persons against whom it should lie, that it would have done so. We think the maxim *"expressio unius est exclusio alterius"* applicable.

In Securities and Exchange Commission v. Long Island Lighting Co., 2 Cir., 148 F.2d 252, 256, plaintiff sought to invoke the general equity powers of a Federal court. Referring to the fact that the Congress conferred upon the Commission in that case power to invoke the aid of the courts "only to prevent evasions of the Act and non-compliance with the orders of the Commission," the court said: "There is concededly no power to restrain or discipline holding companies exempt from its provisions. It would seem, therefore, that the guide to statutory construction in the maxim expressio unius exclusio alterius,

is applicable. Express powers are generally construed to be in negation of powers not expressly granted * * *."

■ But it is urged that the plaintiff is not relying exclusively upon the statutory authority but is invoking what is referred to as the general equity power of the court. Federal courts are not courts of general jurisdiction but whatever equitable jurisdiction the court might impliedly have possessed, we think, upon the adoption of this statute was limited to the persons expressly designated therein. This we think is the teaching of the Supreme Court in Continental Casualty Co. v. United States, supra.

The complaint names a number of persons alleged to be motor carriers. The evidence was without dispute that the owners of the various trucks had leased them to the defendant. Enjoining the defendant would of necessity have affected the property rights of these parties. Rule 19(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides: "(a) Necessary Joinder. Subject to the provisions of Rule 23 and of subdivision (b) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants. When a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff."

These parties had a monetary interest in the controversy here involved.

■ On the question as to who are necessary parties the case of Shields v. Barrow, 17 How. 130, 15 L.Ed. 158, is often cited. It is there said that "persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience" are indispensable parties. This case is cited as an authority in Commonwealth Trust Co. of Pittsburg v. Smith, 266 U.S. 152, 45 S.Ct. 26, 28, 69 L.Ed. 219, where it is said: "But, as the bill was dismissed because of the refusal to bring in additional parties,

the only question open here is whether the parties indicated were necessary parties. Of course they were, if they had such an interest in the matter in controversy that it could not be determined without either affecting that interest or leaving the interests of those who were before the court in a situation that might be embarrassing and inconsistent with equity."

To the same effect see: Chance v. Buxton, 5 Cir., 170 F.2d 187; Keegan v. Humble Oil & Refining Co., 5 Cir., 155 F.2d 971; Christian v. Atlantic & N. C. R. Co., 133 U.S. 233, 10 S.Ct. 260, 33 L.Ed. 589.

■ These parties have such an interest in the controversy that a final decree can not, we think, be made without affecting that interest, or, as said by the Supreme Court, "leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity." An injunction here against the defendant could only be granted on the theory that the various leases and contracts are void. Certainly these parties have a very substantial interest in that question and we conclude that they are indispensable parties.

The order appealed from is therefore affirmed.